CHARLES C. BARNES & another *vs.* ALOYSIA M. BARNES & others.

Middlesex.    December 2, 1935. — January 2, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Equity Jurisdiction,* To set aside conveyance of real estate. *Fraud. Deed,* Validity.

A final decree dismissing the bill was affirmed on appeal in a suit in equity to set aside a deed alleged to have been either forged or procured by fraud, on a finding by the trial judge supported by the evidence that there was no forgery or fraud.

BILL IN EQUITY, filed in the Superior Court on October 28, 1933, seeking a reconveyance of real estate in Marblehead.

The suit was heard by *Walsh,* J., by whose order a final decree dismissing the bill was entered. The plaintiffs appealed.

*W. J. Killion, (T. W. Lawless* with him,) for the plaintiffs.
*T. F. Vahey,* for the defendants.

CROSBY, J. This is an appeal from a final decree entered in the Superior Court. The plaintiffs are Charles C. Barnes as conservator of the estate of Catherine F. Barnes in her lifetime, and William H. Eames, administrator of her estate, she having died during the pendency of these proceedings. The defendants are Aloysia M. Barnes and others.

The case is before this court on the pleadings and the evidence heard by the trial judge, who found the following facts: Catherine F. Barnes at the time of the trial was over eighty years of age, feeble, and of poor memory. She was the aunt of the plaintiff Charles C. Barnes, who is the sole survivor of four brothers, the others, now deceased, being Joseph, James and Francis H. The defendant Aloysia M. Barnes is the widow of Francis H. Barnes. Catherine F. Barnes, under the will of one James Grady, who deceased November 15, 1919, received a life estate in his real estate, with power to sell if necessary for her support, with remain-

der over to John Grady, his son. John died June 16, 1924, and Catherine F. Barnes was appointed administratrix of his estate. After the death of James Grady, she continued to live on the premises in Marblehead, where she had resided since she was about twenty years of age. In June, 1920, she and John Grady mortgaged the property to the Marblehead Coöperative Bank, to pay a mortgage given by James Grady, and this mortgage remained on the property, with payments on account of principal and interest from time to time, until October 26, 1927, when it was discharged, at which time it was in arrears and there was due $379.64. This sum was paid by the defendant William E. Ludden, and a mortgage was given by Catherine F. Barnes to the defendant William E. Ludden, junior, in the sum of $475, out of which sum were paid the taxes, a charge of William E. Ludden and some small bills, and the balance, $52.11, was paid by William E. Ludden to Catherine F. Barnes. This mortgage given to Ludden, junior, was signed by said Barnes, "spelling her first name with a 'K,' but . . . she was accustomed to spelling her first name in that manner, but usually employed the letter 'C' as the initial letter of her first name." She executed this mortgage after consultation with Francis H. Barnes. Catherine F. Barnes, about this time, was in needy circumstances, and her nephews had conferred about the matter of providing for her support, but no definite plan had been agreed upon. Francis H. Barnes seemed to be her favorite, and in 1929 he and Catherine F. Barnes agreed that she would convey the property to him, and he and his wife would take care of her and "live with her" thereafter. She went to visit her nephew James, and while there it was necessary to have an operation performed and she went to a hospital, and then she returned to the home of her nephew James. She later went to Marblehead, after a visit at the home of Francis H. and Aloysia M. Barnes. While at their home, as a result of a talk with Francis H. Barnes, she agreed to execute a deed to Francis, and he agreed that she should thereafter live with him and his wife, who was an employee of the defendant William E. Ludden. The latter visited Catherine F. Barnes at the home of Aloysia M. Barnes in

Watertown, and discussed the matter with "Aunt Kate," as she was called by all the parties to these proceedings and likewise by her deceased nephews, and prepared a deed which was sent out to her and delivered by Aloysia M. Barnes. She executed this deed on November 12, 1929, and while on her way from Watertown to Marblehead in an automobile she acknowledged it before William E. Ludden, who came out of his house in Saugus to the automobile, which had stopped in front of his home.

The judge further found that at that time Catherine F. Barnes knew she had conveyed her property in Marblehead to her nephew Francis H. Barnes, and acknowledged it to be her free act and deed. The mortgage to William E. Ludden, junior, was paid by Francis H. Barnes, and later he mortgaged the premises and made repairs to the house, which was an old building without a cellar and in need of repairs. Catherine F. Barnes lived with Aloysia M. Barnes and her husband during the summer of 1930, and they occupied the premises in Marblehead until May, 1933, when Francis H. Barnes died. Thereafter Catherine F. and Aloysia M. Barnes remained on the premises until the following October. Shortly before they moved to Boston in October, Charles C. Barnes and his sister called on Aloysia M. Barnes and inquired what she was going to do about "Aunt Kate," and stated that they had a legal interest in her. Mrs. Barnes stated she intended moving to Boston for the winter and returning in the spring to Marblehead. No objection was raised, and Catherine was taken to Ivy Street, Boston, where they resided with Aloysia's mother and other members of her family. Some time thereafter, while Aloysia and others of her mother's family were absent attending church, Catherine F. Barnes was taken, at the instance of Charles C. Barnes, from the house of the mother of Aloysia Barnes in Boston to the home of Charles C. Barnes in Medford. When Aloysia M. Barnes learned of the whereabouts of Catherine F. Barnes she went to the home of Charles and asked to see "Aunt Kate," but was informed by Charles that "Aunt Kate" did not wish to talk with her. Aloysia was denied admis-

sion to the house, "and had not seen her until the hearing . . . when in the court room, said Aloysia was not allowed to approach the said Catherine F. Barnes." Charles C. Barnes was appointed conservator of Catherine F. Barnes in October, 1933.

The judge found "that while . . . Catherine F. Barnes lived at Marblehead after 1929 . . . the defendant Aloysia M. Barnes was working in Boston, and that she would do most of the housework on her return from Boston in the afternoon," but during the last two years of her husband's life he was at home as he had to give up active work because of his health, and while he was living in Marblehead he assisted with the housework; "that the said Catherine F. Barnes was contented and well taken care of by defendant Aloysia M. Barnes, but became discontented while living in Watertown, and preferred to live at Marblehead, but she had . . . no quarrel with said Aloysia M. Barnes, while they resided together; . . . that the brothers of said Francis H. Barnes, the favorite of said Catherine F. Barnes, knew of the transfer of the property to said Francis H. Barnes, and while somewhat disturbed about it made no remonstrance to him about it, although his sister Mary refused to visit her aunt at Marblehead after learning of the transaction, and after his death a coolness arose between the said Mary" and Charles C., and 'the defendant Aloysia M. Barnes; "that there are some personal effects of said Catherine F. Barnes in the home at Marblehead, which the plaintiff Charles C. Barnes is entitled to take possession of, and the defendant Aloysia M. Barnes is willing to deliver." The conclusion of the judge is as follows: "I find no fraud, deceit or forgery in the conveyance of the property at Chestnut Street in Marblehead by said Catherine F. Barnes to Francis H. Barnes, and rule that the plaintiffs are not entitled to the relief sought in their bill."

An examination of the reported evidence fully warrants the findings of the judge. The final decree dismissing the bill is affirmed with costs.

*Ordered accordingly.*